**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AMERICAN MODERN SELECT INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No. 08-CV-122-TCK-TLW |
| (1) JASON CRUM, Individually and d/b/a J.C.O., (2) JESSIE CRUM, and (3) GLENWOOD APARTMENTS, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are Plaintiff's Motion for Judgment Against Defendant Jason Crum Individually and d/b/a J.C.O (Doc. 39); Plaintiff's Motion for Judgment Against Defendant Jessie Crum (Doc. 42); and Plaintiff's Motion for Summary Judgment (Doc. 45).

**I.     Background**

On April 25, 2007, Defendant Jason Crum ("Jason") met with David Dillion ("Dillion"), the owner and manager of Defendant Glenwood Apartments, LLC ("Glenwood"), to discuss a construction project at Glenwood. Specifically, Dillion planned to replace his flat roof with a pitched roof to help control water leakage. Before a roofer could lay the tar and shingles, Dillion needed a construction crew to complete several preliminary projects. Essentially, Jason and his crew were to demolish the "mansard," which was an overhang surrounding the flat roof, and then construct the frame for the new roof.

Following the April 25, 2007 meeting, Jason and Dillion executed a document setting forth the scope of work ("Scope of Work") to be completed by Jason and his crew. The Scope of Work, handwritten by Dillion, lists several items to be completed by Jason's crew:

1. Tear off mansuer [sic][1]
2. Lay out and install plate and secure it
3. Stand rafters
   Brace rafters;
4. Deck + 2x6 Subfacie;
\* Get Roofer started
5. 2 Dormers
6. Aline [sic] ceiling joist + stiff back 2x12
7. Cornice + Rails

(Ex. 2 to Mot. for Summ. J (footnote added).) While completing these projects over the next few weeks, Jason's crew allegedly failed to cover exposed areas and failed to prevent rain damage that occurred during the course of construction. Jason's father, Defendant Jessie Crum ("Jessie"), worked for Jason and was involved with supervision of the crew working at Glenwood.[2]

On October 9, 2007, Glenwood sued Jason, individually and doing business as J.C.O., and Jessie in Creek County District Court ("Underlying Litigation"). Glenwood alleged that Jason and Jessie "failed to perform the work described and required of them" and "negligently allowed the property to become exposed to the elements resulting in additional damage to the property." (Creek County Pet., Ex. 9 to Mot. for Summ. J.) Glenwood requested judgment in the amount of $317,251.37.

Jason, doing business as J.C.O., is the holder of a Commercial General Liability Insurance Policy, numbered Q61008887 ("Policy"), furnished by Plaintiff American Modern Select Insurance

---

[1] The proper spelling of this term is "mansard."

[2] Jason and Jessie will be collectively referred to as the Crums.

Company ("AMSIC"). On March 4, 2008, AMSIC filed the instant declaratory judgment action, seeking a declaration that: (1) AMSIC has no duty to defend Jessie or Jason, individually and d/b/a/ J.C.O, in the Underlying Litigation; and (2) AMSIC has no duty to indemnify for any judgment rendered against Jessie or Jason, individually and d/b/a/ J.C.O., in the Underlying Litigation.

AMSIC argues that it is entitled to a declaratory judgment based on two provisions of the Policy. First, the Policy contains an endorsement entitled EXCLUSION-ROOFING, which provides that the Policy does not apply to property damage "arising out of any roofing operations, roof repair, or roof reconstruction" ("Roofing Exclusion"). (Policy, Ex. 10 to Mot. for Summ. J.) AMSIC argues that the alleged property damage to Glenwood arose out of roofing operations, roof repair, or roof reconstruction and is therefore excluded from the Policy. Second, the Policy only extends to property damage caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" ("Occurrence Requirement"). (*Id.*) AMSIC argues that the alleged property damage was not caused by an occurrence, *i.e.*, an accident, because Jason and Jessie intentionally and knowingly exposed Glenwood to the rain and resulting property damage.

Glenwood filed a response to AMSIC's motion for summary judgment, arguing that summary judgment must be denied because "there is ambiguity as to whether the roofing exclusion applies" and because "[t]here is no evidence that the insured intended harm to the property." (Resp. to Mot. for Summ. J. 10.) Neither Jason or Jessie have entered an appearance or responded to the motion for summary judgment.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006) (citation omitted). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

## III. AMSIC's Motion for Summary Judgment

The Court denies AMSIC's request for summary declaratory judgment for two reasons. First, the Court finds the Roofing Exclusion to be ambiguous and will therefore allow a jury to determine its meaning. Second, there exist disputed facts that preclude summary declaratory judgment in favor of AMSIC.

### A. <u>Ambiguity of "Roofing Operations, Roof Repair, and Roof Reconstruction"</u>

"The interpretation of an insurance contract and whether it is ambiguous is determined by the court as a matter of law." *Haworth v. Jantzen*, 172 P.3d 193, 196 (Okla. 2006). "An insurance contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson, not from that of a lawyer." *Id.*; *see also Gutkowski v. Okla. Farmers Union Mut. Ins. Co.*, 176 P.3d 1232, 1234 (Okla. Civ. App. 2007). In making this

determination, a court may "not indulge in forced or constrained interpretations to create and then construe ambiguities in insurance contracts." *Haworth*, 172 P.3d at 196.

The Court finds that the Roofing Exclusion is susceptible to more than one interpretation and is therefore ambiguous. From the perspective of a reasonably prudent lay person, the phrases "roofing operations," "roof repair," or "roof reconstruction" are susceptible to at least two different interpretations. One reasonable interpretation is that, by using the word "roof" or "roofing" in all three phrases, the parties intended to limit the Roofing Exclusion to those activities typically completed by a "roofer," which are laying tar and shingles on an existing frame. This would mean the Roofing Exclusion extends only to "operations" relating to the tar and shingles that comprise the actual roof, repairing the tar and shingles that comprise the actual roof, or reconstructing the tar and shingles that comprise the actual roof. Another reasonable interpretation is that, by including the words "operations," "repair," and "reconstruction" after the words "roof" or "roofing," the parties intended the exclusion to apply to a broader range of activities, such as the framing and demolition that occurs prior to the actual tar and shingles being laid. The Court finds that a reasonably prudent layperson could interpret the Roofing Exclusion in either manner and therefore finds that a jury shall be allowed to consider extrinsic evidence and discern its meaning. *See Altshuler v. Malloy*, 388 P.2d 1, 4 (Okla.1963) ("We have consistently held that where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts are admissible, and construction of contract then becomes a mixed question of law and fact and should be submitted to a jury under proper

5

instructions."); *Stephenson v. Oneok Res. Co.*, 99 P.3d 717, 721 (Okla. Civ. App. 2004) (same).[3] [4]

B.     Factual Disputes

In addition to the ambiguity of the Roofing Exclusion, there are at least three relevant disputed facts that preclude summary declaratory judgment. First, there is a genuine dispute of fact as to whether the Crums removed or repaired any part of the existing flat roof or only removed the

---

[3]  Based on the Court's conclusion regarding ambiguity, it appears that Glenwood will be entitled to the benefit of an instruction that words of exclusion in an insurance contract are strictly construed against the insurer. *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 799-800 (10th Cir. 1995) (applying Oklahoma law) (explaining that, when an insurance contract is ambiguous, "the familiar rule of insurance contract interpretation applies and words of inclusion are liberally construed in favor of the insured and words of exclusion are strictly construed against the insurer"); *Timmons v. Royal Globe Ins. Co.*, 653 P.2d 907, 913 (Okla. 1982) (approving similar jury instruction as correct statement of Oklahoma law). Glenwood is also likely entitled to the benefit of an instruction regarding the "reasonable expectations" doctrine, which provides that "if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy." *See Max True Plastering Co. v. U.S. Fidelity & Guar. Co.*, 912 P.2d 861, 864 (Okla. 1996) (explaining that reasonable expectations doctrine applies in cases of ambiguous insurance contracts). Although the Court will entertain arguments during the instruction conference regarding the propriety of such instructions, both parties are ordered to submit proposed instructions on these topics.

[4]  The case principally relied upon by AMSIC is *Covenant Insurance Company v. Jonathan Construction Corporation*, 237 A.D.2d 243 (N.Y. 1997). In that case, the court interpreted a provision in an insurance policy that excluded property damage "resulting from the influx of rain, now or hail through the roof of any such building or structure and arising out of your roofing operations." *Id.* The court rejected the insured's argument that such exclusion did not apply because the insured was performing carpentry work instead of "roofing" work when the damage occurred. *Id.* at 244. This Court disagrees with the *Covenant Insurance* decision to the extent it concludes that the phrase "roofing operations" unambiguously applies to all carpentry work completed prior to the laying of tar and shingles. Further, the facts are distinguishable because the insured in that case had "peeled away the waterproof covering of the plaintiff's roof to install roof trusses." *Id.* at 243. Here, there are disputed questions of fact as to whether the insured removed portions of the existing flat roof and whether the mansard, which was undisputedly removed by the insured, was considered part of the existing roof. *See infra* Part III.B. Accordingly, the Court does not find *Covenant Insurance* to be persuasive or controlling.

6

mansard (*see* AMSIC Fact 3, 5, 7 and Glenwood Fact 6). Second, there is a dispute of fact as to whether a mansard is merely a "cosmetic effect," as characterized by Glenwood, or is considered part of the "roof," as characterized by AMSIC. These facts are material because they impact the determination of whether the work completed by Jason's crew qualified as "roofing operations, roof repair, or roof reconstruction."

Third, there is a dispute of fact as to what, if any, steps the Crums took to prevent the property damage that ultimately occurred (*see* AMSIC Facts 10, 11, 13 and Glenwood Fact 4). AMSIC claims that the Crums intentionally abandoned the work site and that property damage resulting from the Crums' actions was therefore caused by intentional actions rather than an "accident." However, Dillion testified that the Crums took some measures to prevent rain damage and did not "abandon" the job until after the property damage had already occurred. These facts are material because they impact the determination of whether the Occurrence Requirement is satisfied.

## IV. AMSIC's Motion for Judgment Against Jason and Jessie

Neither Jason or Jessie have answered or otherwise appeared in this litigation, and AMSIC moved for default judgment against both pursuant to Federal Rule of Civil Procedure 55 and Northern District Local Civil Rule 55.1. Glenwood responded to the motions for default judgment, arguing that a default judgment in favor of Jason or Jessie would adversely affect Glenwood and deny Glenwood the "fundamental right to participate as an injured party" because the "default judgment" would in effect be a declaration that AMSIC has no duty to defend or indemnify. (Resp. to Mots. for Default 2.) Glenwood argues that the Court should refrain from entering any judgment against Jason or Jessie until resolution of the pending issues in the declaratory judgment action.

AMSIC's motions for default judgment against Jason and Jessie are denied without prejudice based on procedural deficiencies.  AMSIC failed to follow the proper procedure for obtaining default judgment because it did not move the Clerk for an entry of default prior to moving for default judgment.  *See* LCvR 55.1 (explaining that default judgment may be obtained only after a party has been declared in default by the clerk).  Once the proper procedure has been followed, AMSIC may re-file such motions.  The Court will address any re-filed motions for default judgment at the pretrial conference, and the parties shall be prepared to discuss all issues associated therewith.[5]

For reasons set forth above, Plaintiff's Motion for Judgment Against Defendant Jason Crum Individually and d/b/a J.C.O (Doc. 39) and Plaintiff's Motion for Judgment Against Defendant Jessie Crum (Doc. 42) are DENIED.  Plaintiff's Motion for Summary Judgment (Doc. 45) is DENIED.

SO ORDERED this 3rd day of June, 2009.

TERENCE KERN
United States District Judge

---

[5] It is unclear if there is an actual controversy between Jessie and AMSIC because Jessie is not a party to the Policy.  In any event, the Court will dely resolution of any such issues until the pretrial conference.